**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IN RE:<br>CAPITOL BREACH<br>GRAND JURY INVESTIGATIONS WITHIN<br>THE DISTRICT OF COLUMBIA | ) ) ) ) ) ) ) | Misc. No. Case: 1:21–gj–00020<br>Assigned To : Howell, Beryl A.<br>Assign. Date : 6/29/2021<br>Description: Misc.<br><br>Under Seal |

## MOTION TO AUTHORIZE THE DISCLOSURE OF GRAND JURY MATERIALS

The United States of America respectfully requests this Court to enter the attached proposed order authorizing the disclosure of grand jury matters to an independent contractor, Deloitte Financial Advisory Services, LLP ("Deloitte"), pursuant to Federal Rule of Criminal Procedure 6(e)(3)(A)(ii). In support of its motion, the government states as follows:

## BACKGROUND

On January 6, 2021, as a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election, members of a large crowd that had gathered outside forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. Thousands of individuals entered the U.S. Capitol without authority to be there. As a result, the Joint Session and the entire official proceeding of the Congress was halted until the Capitol Police, the Metropolitan Police Department, and other law enforcement agencies from the city and surrounding region were able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials. This event in its entirety is hereinafter referred to as the "Capitol Breach."

The investigation and prosecution of the Capitol Breach will be one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence. To date, over 500 individuals located throughout the nation have been charged

with a multitude of criminal offenses arising out of the Capitol Breach, including conspiracy, tampering with documents or proceedings, destruction and theft of government property, obstruction of law enforcement during civil disorder, assaults on law enforcement, obstruction of an official proceeding, engaging in disruptive or violent conduct in the Capitol or on Capitol grounds, and trespass.

As a result of the government's investigation, the government has collected enormous amounts of data.  An illustrative list of voluminous materials accumulated by the government in the Capitol Breach investigation thus far include:

- Surveillance footage, including but not limited to more than 14,000 hours of camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds;

- More than 2,000 hours of body worn camera footage from multiple law enforcement agencies;

- Over 300,000 tips, including approximately 237,000 digital media tips;

- Over 2,000 digital devices;

- Information from the searches of hundreds of accounts maintained with electronic communications service providers and/or remote computing services providers;

- Over 240,000 Federal Bureau of Investigation ("FBI") investigative memoranda and attachments;

- Location history data for thousands of devices present inside the Capitol (obtained from a variety of sources including Google and multiple data aggregation companies);

- Cell tower data for thousands of devices that were inside the Capitol building during the Capitol Breach (obtained from the three major telephone companies);

- A collection of over one million Parler posts, replies, and related data, collected by the FBI from publicly accessible locations on the Internet;

- A collection over one million Parler videos and images (approximately 40 terabytes of data) scraped by an Internet user who voluntarily provided the

      material to the FBI; and

- Subscriber information and two weeks of toll records for hundreds of phone numbers that were associated with a Google account identified from the first Google geofence search warrant.

As is most relevant here, the voluminous data accumulated by the United States in connection with the investigation of the Capitol Breach also includes materials that are or may be protected by Federal Rule of Criminal Procedure 6(e) ("Rule 6(e)"). Over 200 individuals have already been indicted by grand juries currently and previously empaneled in this District. Among the documents that must be processed, hosted, reviewed and produced when discoverable are transcripts and exhibits from those grand jury presentations. In addition, over 6,000 grand jury subpoenas have been issued in connection with the Capitol Breach, and thousands of documents have been returned in response, e.g., financial records, telephone records, electronic communications service provider records, and travel records.[1] As the Capitol Breach investigation is still on-going, the number of cases presented to the grand jury and the number of subpoenas for documents will only continue to grow.

---

[1] As a general matter, Rule 6(e) does not apply to individual subpoenaed documents that are sought only for the information they contain, rather than to reveal the direction or strategy of the grand jury investigation. *See United States v. Dynavac*, 6 F.3d at 1411-12 (citing *DiLeo v. Commissioner of Internal Revenue*, 959 F.2d 16, 19 (2d Cir. 1992)) (if a document is sought for its own sake rather than to learn what took place before the grand jury, and if its disclosure will not compromise the integrity of the grand jury process, Rule 6(e) does not prohibit its release); *In re Grand Jury Investigation*, 630 F.2d at 1000-01; Securities and Exchange Comm'n v. Dresser Indus., 628 F.2d 1368, 1382-83 (D.C. Cir. 1980); *United States v. Stanford*, 589 F.2d 285, 291 (7th Cir. 1978); *United States v. Interstate Dress Carriers*, 280 F.2d 52, 54 (2d Cir. 1960); *Ferreira v. United States*, 350 F.Supp.2d 550, 559-60 (S.D.N.Y. 2004). *But see In re Grand Jury Proceedings*, 851 F.2d 860, 866 (6th Cir. 1988); *In re Grand Jury Disclosure*, 550 F. Supp. 1171, 1177 (E.D. Va. 1982) (party must show particularized need and compelling necessity in order to justify disclosure of documents subpoenaed by the grand jury).

The government recognizes, however, that the Court may view the disclosure of all documents subpoenaed in connection with the Capitol Breach, together with the subpoenas used to obtain those documents, as covered by Rule 6(e) secrecy requirements, because such a disclosure is more likely to reveal the scope or direction of the investigations arising out of the Capitol Breach. *See Fund for Constitutional Gov't v. National Archives & Records Serv.*, 656 F.2d 856, 868-70 (D.C. Cir. 1981) (Freedom of Information Act request for all documents obtained by the grand jury was properly denied by the district court because disclosure would reveal matters occurring before the grand jury).

A large volume of the information that has been collected (including the materials that are or may be protected by Rule 6(e)), consists of Electronically Stored Information ("ESI"). ESI frequently contains significant metadata that may be difficult to extract and produce if documents are not processed using specialized techniques. Metadata is information about an electronic document and can describe how, when and by whom ESI was created, accessed, modified, formatted, or collected. In the case of a document created with a word processing program, for example, metadata may include the author, date created, and date last accessed. In the case of video footage, metadata may identify the camera that was used to capture the image, or the date and time that it was captured. Metadata may also explain a document's structural relationship to another document, e.g., by identifying a document as an attachment to an investigative memoranda.

Following the Capitol Breach, the United States Attorney's Office for the District of Columbia ("USAO-DC") recognized that due to the nature and volume of materials being collected, the government would need to employ software tools for both discovery review and trial preparation. The government also recognized that managing the materials would require the use of an outside contractor who could provide litigation technology support services, to include highly technical and specialized data and document processing and review capabilities.[2] Accordingly, the government contracted Deloitte to assist in the collection, processing, hosting, review and production of materials related to the Capitol Breach.

Deloitte is a litigation support vendor with extensive experience providing complex

[2] Processing, hosting, and production of the voluminous and varied materials described above, to include the preservation of significant metadata, involves highly technical considerations of the document's source, nature, and format. For example, the optimal type of database for hosting and reviewing video footage may differ from the optimal type of database for hosting investigative memoranda. Similarly, a paper document, a word processing document, a spreadsheet with a formula, video footage from a camera, or video footage associated with a proprietary player may each require different types of processing to ensure they are captured by database keyword searches and produced with significant metadata having been preserved.




litigation technology services to various government agencies, including the Departments of Defense, Navy, Air Force, Interior, and State, in addition to the Department of Justice. The government's contract with Deloitte contains all applicable personnel and information security requirements required by the Federal Acquisition Regulations. All Deloitte employees supporting the contract are bound by a strict confidentiality agreement designed to maintain stringent privacy protocols on all materials processed at the Deloitte facility and are subjected to rigorous security background investigations. All data managed by Deloitte maintained under the contract resides in the Deloitte hosting environment, which meets the security requirements under the Federal Risk Authorization Management Program (FedRAMP) Moderate, Federal Information Security Management Act (FISMA), NIST 800-53 Rv. 4, and DoD Mission Assurance Category (MAC) II sensitive security baselines. Deloitte employees are not allowed to take case-related materials outside of their secure facility, which is managed through a digital access control system with area control and access management. Transmission of material between Deloitte and the government is subject to stringent information security protocols that entail the use of data encryption, a dual-container configuration, and other measures specially designed to ensure the security of sensitive information.

      USAO-DC supervises and directs the work being performed by Deloitte under the contract. Deloitte's employees will be required to adhere to all grand jury secrecy requirements and other applicable laws, regulations, and Department of Justice policies and procedures, including maintaining properly locked and secure storage of grand jury materials, limiting access to grand jury materials, and preventing any improper disclosure of grand jury materials. If the Court grants this motion, USAO-DC will provide Deloitte a written advisement as to its obligations with respect to grand jury secrecy and will certify to this Court that it has done so, consistent with Rule 6(e)(3)(B).

In sum, Deloitte furnishes secure, complex, and highly technical services with respect to document processing and review. Deloitte's access to voluminous grand jury materials is needed to assist federal prosecutors in the performance of their duties, including document review, discovery production, and trial preparation, and Deloitte's employees will be required to adhere to all grand jury secrecy requirements.

## AUTHORITY

Rule 6(e)(3)(A)(ii) of the Federal Rules of Criminal Procedure permits the disclosure of grand jury information to government personnel required to assist the prosecutors' law enforcement mission and provides, in pertinent part, as follows:

> (A) Disclosure of a grand-jury matter – other than the grand jury's deliberations or any grand juror's vote – may be made to:
>
> . . .
>
> (ii) any government personnel – including those of a state, state subdivision, Indian tribe, or foreign government – that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law. . . .

While Rule 6(e)(3)(A)(ii) does not require a court-issued disclosure order, the government nonetheless seeks such an order here out of an abundance of caution, as case law is not extensive on the issue of what types of independent contractors may constitute "government personnel" within the meaning of Rule 6(e)(3)(A)(ii).

Courts have recognized that contract employees may be considered "government personnel" for purposes of Rule 6(e)(3)(A)(ii) when those employees perform necessary prosecutorial functions under government control. In *United States v. Pimental*, 380 F.3d 575 (1st Cir. 2004), for example, the court held that it was proper for a United States Attorney's Office to obtain court approval, under Rule 6(e)(3)(A)(ii), for disclosure of grand jury materials to an investigator employed by a private insurance fraud bureau, even though the investigator was a "private actor [employed by the private bureau], which investigates potential cases of insurance

fraud, is authorized and structured by Massachusetts statute, but partially run and entirely funded by insurers." *Id.* at 578-79.  The court found that such private insurance investigators fell within the "government personnel" provision, and therefore that disclosure was allowed under Rule 6(e)(3)(A)(ii).  *Id.* at 596.  The court also found it proper for the government to seek authorization from the court for disclosure to independent contractors and "make a functional showing" that such contractors fall within the ambit of Rule 6(e)(3)(A)(ii).

Courts in the Second and Tenth Circuits have likewise found that government contractors may be considered "government personnel" for Rule 6(e)(3)(A)(ii) purposes when they perform necessary prosecutorial functions that cannot reasonably be performed by traditional Civil Service employees and when they work under the control of government prosecutors.  *United States v. Lartey*, 716 F.2d 955, 964 (2d Cir. 1983); *United States v. Anderson*, 778 F.2d 602, 605 (10th Cir. 1985).  *But see In re Grand Jury Matter*, 607 F.Supp.2d 273 (D. Mass. 2009), in which the court denied the government's motion for authority to disclose grand jury information to agents and employees of a "private consulting firm." The court first concluded that the contractor, unlike the insurance fraud entity in Pimental, was not even a "quasi governmental entity" so that disclosure to it under Rule 6(e)(3)(a)(ii) was improper.

Deloitte's employees should be viewed as "government personnel" authorized to access grand jury materials for the purpose of assisting prosecutors in the performance of their duties within the meaning of Rule 6(e)(3)(A)(ii).  Deloitte's personnel undergo similar clearance and background investigation procedures as employees at USAO-DC, and they operate under the control of attorneys who are investigating and prosecuting Capitol Breach cases.  They execute confidentiality agreements and conflict-of-interest forms for each case on which they assist.  Like the government contract employees in *Pimental*, *Lartey*, and *Anderson*, Deloitte contract personnel will perform highly technical litigation support and data processing services that are vital to

USAO-DC's ability to review voluminous data, produce discovery, and prepare for trial.

## III. CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court enter the attached proposed order permitting the disclosure of grand jury materials to Deloitte for purposes of technical litigation support and data processing services.

Submitted this _____ day of June, 2021.

CHANNING PHILLIPS
Acting United States Attorney

By: /s/

Emily A. Miller
Capitol Breach Discovery Coordinator
D.C. Bar No. 462077
555 4th Street, N.W., Room 5826
Washington, D.C. 20530
202-252-6988
Emily.Miller2@usdoj.gov