UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: )<br>CAPITOL BREACH )<br>GRAND JURY INVESTIGATIONS WITHIN )<br>THE DISTRICT OF COLUMBIA )<br>)<br>) | Misc. No. 21-GJ-00020 (BAH)<br><br>Under Seal |

**UNITED STATES' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
MOTION TO AUTHORIZE THE DISCLOSURE OF GRAND JURY MATERIALS**

The United States submits this supplemental memorandum in response to the Court's June 30, 2021, minute order directing the government to address "how the government's expansive reading of the term 'government personnel' in Federal Rule of Criminal Procedure 6(e)(3)(A)(ii) to include a private consulting firm holding a government contract" comports with *McKeever v. Barr*, 920 F.3d 842, 846 (D.C. Cir. 2019), which requires "a district court to hew strictly to the list of exceptions to grand jury secrecy." For the reasons stated in our motion and below, we believe that our position is fully consistent with the narrow strictures of Rule 6(e), the *McKeever* decision, and the decisions of other courts that have considered the question.

As an initial matter, the government's request here is wholly distinguishable from the petitioner's request in *McKeever*. McKeever sought the public disclosure of grand jury materials based on the court's purported inherent authority to disclose matters of historical significance. Here, the government is requesting the Court to concur that a private contractor engaged to fulfill a particularized need for technology support services for a document-intensive investigation and prosecution, and *bound by security and confidentiality provisions like those applicable to federal employees who handle grand jury materials*, constitutes "government personnel" under an exception to grand jury secrecy enumerated in Rule 6(e)(3)(A)(ii). For the reasons stated in our

initial motion and below, the government's position that Deloitte's contract employees should be considered "government personnel" under this exception is well-founded.

First, although text of Rule 6(e)(3)(A)(ii) does not define "government personnel," the definition cannot be based on whether a person is a federal government employee, as the language of the rule and the legislative history provide for the inclusion of personnel of other governments in the definition. *See* Fed. R. Crim. P. 6(e)(3)(a)(ii) (including personnel of a state, state subdivision, Indian tribe, or foreign government in the non-exclusive list of persons who may constitute "government personnel"); *In re Disclosure of Matters Occurring before a Grand Jury to the Litig. Tech. Serv. Ctr.*, Misc. No. 11-00163 JMS, 2011 WL 3837277 *2 (D. Haw. Aug. 25, 2011) (unpublished) (describing legislative history).

Moreover, as noted in our initial motion, all U.S. Courts of Appeals to consider the question have found that that the term "government personnel" is not limited to permanent or full-time federal employees. *See United States v. Pimental*, 380 F.3d 575, 595 (1st Cir.2004)(permitting disclosure to a Massachusetts Insurance Fraud Bureau investigator who worked for a "quasi-governmental" entity that "straddle[d] the line between a government and private entity"); *United States v. Anderson*, 778 F.2d 602, 605 (10th Cir.1985) (holding that a trust law expert, under contract with the government, constituted "government personnel"); and *United States v. Lartey*, 716 F.2d 955, 963-64 (2d Cir.1983)(permitting disclosure to retired Internal Revenue Service agent who worked exclusively for the government while assisting on the investigation, where the records were kept in a secure government location, and the retired agent discussed the material only with government attorneys and agents). *See also In re Disclosure of Matters Occurring before a Grand Jury to the Litig. Tech. Serv. Ctr.*, 2011 WL 3837277 *3 (permitting disclosure of grand jury materials to private contractor personnel who

operate the Litigation Technology Service Center ("LTSC"), a federally-owned facility that provides document and data processing services to United States Attorney's Offices nationwide).[1]

Second, in *McKeever*, the Court's conclusion that the district court had no authority outside of Rule 6(e) to require the disclosure of grand jury material was rooted in the need to protect the vital purposes of grand jury secrecy, to wit: "(1) preserving the willingness and candor of witnesses called before the grand jury; (2) not alerting the target of an investigation who might otherwise flee or interfere with the grand jury; and (3) preserving the rights of a suspect who might later be exonerated." *McKeever*, 920 F.3d at 844 (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979). As the Court observed, although all of the witnesses from the grand jury proceeding were likely dead, "there is likely to be a chilling effect on what a witness is willing to say to a grand jury if there is a risk the court will later make the witness's testimony public." *McKeever*, 920 F.3d at 849 (emphasis added). McKeever's request was thus completely inconsistent with at least one of the purposes for which grand jury secrecy exists.

Here, the safeguards that Deloitte is required to take in ensuring the security and confidentiality of the materials are wholly consistent with the long-established purposes of grand jury secrecy. For example:

1. Deloitte will store data within a secure hosting environment, which meets the security requirements under the Federal Risk Authorization Management Program (FedRAMP) Moderate, Federal Information Security Management Act (FISMA),

---

[1] Notably, Deloitte is the entity that currently operates the LTSC, having acquired the assets of the original contractor in June 2012. Through its longstanding contract with the LTSC, Deloitte has previously been advised of its secrecy obligations under Rule 6(e), and has years of experience implementing safeguards with respect to grand jury materials for United States' offices located nationwide.

    NIST 800-53 Rv. 4, and DoD Mission Assurance Category (MAC) II sensitive security baselines;

2. Deloitte employees are not allowed to take case-related materials outside of their secure facility, which is managed through a digital access control system with area control and access management. Transmission of material between Deloitte and the government is subject to stringent information security protocols that entail the use of data encryption, a dual-container configuration, and other measures specially designed to ensure the security of sensitive information;

3. Deloitte created an Office of Confidentiality and Privacy that has undertaken the following responsibilities to safeguard the PII, confidentiality and sensitive data of their clients (including grand jury materials):
    i. Developed and maintains a comprehensive Privacy Program across the Deloitte U.S. firms;
    ii. Coordinates Deloitte U.S. firms' self-certification to Department of Commerce Safe Harbor program;
    iii. Designed and implemented enterprise-wide privacy training and awareness program; and
    iv. Implementing policies, procedures, and controls designed to protect confidential and sensitive information;

4. Deloitte's contract with USAO-DC contains all applicable personnel and information security requirements required by the Federal Acquisition Regulation. All Deloitte employees supporting the contract are bound by a strict confidentiality agreement designed to maintain stringent privacy protocols on all materials processed at the Deloitte facility and are subjected to rigorous security background investigations. Deloitte is required to comply with the law, policy, and procedures unique to grand jury materials and will be provided a written advisement as to its obligations with respect to grand jury secrecy in this matter consistent with Rule 6(e)(3)(B) if the Court grants this motion; and

5. USAO-DC ultimately controls the handling of all case data and documents. At the end of the contract period, Deloitte will be required to return all materials to the government and to sanitize any media in accordance with government-approved procedures.

In sum, Deloitte contract employees are "government personnel" within the meaning of Rule 6(e)(3)(A)(ii) and should be granted access to grand jury matters for the purpose of assisting prosecutors in processing materials for review and use in these proceedings. Deloitte's access to grand jury materials in this District is needed to assist federal prosecutors in the

performance of their duties.  Deloitte furnishes secure, complex, and highly technical services with respect to paper and electronic data/document processing and review.  Such services are not readily available from full-time Civil Service employees of USAO-DC due to both the volume and types of data involved, and the specialized skills required to efficiently process and review such data in a variety of databases within a secure environment.  More specifically, Deloitte's technical expertise in scanning, coding, digitizing, and performing optical character recognition – as well as processing, organizing, and ingesting Electronically Stored Information and associated metadata in document review platforms – is vital to the USAO-DC's ability to review large data/document productions and is essential to our ability to prosecute these cases effectively.  Further, Deloitte's contractors' access to grand jury materials in this context is completely consistent with the prescripts of grand jury secrecy.

      Submitted this 6th day of July 2021.

                              CHANNING PHILLIPS
                              Acting United States Attorney

By:       /s/
     Emily A. Miller
     Capitol Breach Discovery Coordinator
     D.C. Bar No. 462077
     555 4th Street, N.W., Room 5826
     Washington, D.C. 20530
     202-252-6988
     Emily.Miller2@usdoj.gov