UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| IN RE: ) | Misc. No. 21-GJ-00020 (BAH) |
| CAPITOL BREACH ) | |
| GRAND JURY INVESTIGATIONS WITHIN ) | |
| THE DISTRICT OF COLUMBIA ) | |

**UNITED STATES' SECOND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO AUTHORIZE THE DISCLOSURE OF GRAND JURY MATERIALS**

The United States submits this supplemental memorandum in support of its motion for an order authorizing the disclosure of grand jury matters to an independent contractor, Deloitte Financial Advisory Services, LLP ("Deloitte"). The United States focused its motion on Federal Rule of Criminal Procedure 6(e)(3)(A)(ii), which permits an attorney for the government to disclose grand jury materials to "any government personnel … that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law." The government now submits that a disclosure order would also be appropriate under Rule 6(e)(3)(E)(i), a neighboring provision empowering this Court to "authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . preliminarily to or in connection with a judicial proceeding."

As explained further below, the unique circumstances of the Capitol Breach prosecutions fully justify a disclosure order under Rule 6(e)(3)(E)(i). The disclosures at issue satisfy the Rule's plain terms because they would assist the parties to criminal cases in the preparation or conduct of possible criminal trials, which are "judicial proceeding[s]" under the Rule. The government also has a particularized need to disclose the materials to Deloitte, a trusted contractor whose specialized tools will help the government systematically review all of the

materials that are (or may be) subject to the protections of Rule 6(e) and thus ensure that hundreds of defendants charged (and still to be charged) in the Capitol Breach prosecutions have timely and secure access to the materials to which they are entitled.  Accordingly, if the Court needs to reach the issue, it should determine that a disclosure order is warranted under Rule 6(e)(3)(E)(i).

## DISCUSSION

### A. Legal Framework

The judicial-proceeding exception in Rule 6(e) provides that a district "court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i).  The party seeking disclosure under this provision must satisfy three criteria.  First, the disclosure must be tied to a "judicial proceeding," a term that "has long and repeatedly been interpreted broadly," *In re Committee of Judiciary*, 951 F.3d 589, 596 (D.C. Cir. 2020), *vacated as moot*, No. 19-1328, 2021 WL 2742772 (U.S. July 2, 2021), and that naturally encompasses a criminal trial, *In re Grand Jury*, 490 F.3d 978, 986 (D.C. Cir. 2007) (per curiam). *See* Beale, et al., *Grand Jury Law & Practice* § 5:11 (2d ed.) (the term "clearly permits disclosures in connection with federal, state, and local court proceedings").

Second, the requested disclosure must either be "in connection" with such a proceeding or "preliminar[y] to" it.  "[T]he term 'in connection with' . . . refer[s] to a judicial proceeding already pending, while 'preliminarily to' refers to one not yet initiated." *United States v. Baggot*, 463 U.S. 476, 479 (1983).  Collectively, those two terms show that "the Rule contemplates only uses related fairly directly to some identifiable litigation, pending or anticipated." *Id.* at 480. "The focus is on the *actual use* to be made of the material." *Id.*  And where "the primary

purpose of disclosure is . . . to assist in preparation or conduct of a judicial proceeding, disclosure under" the provision may be authorized so long as the requesting party satisfies the third criteria—a showing of particularized need. *Id.*

To establish particularized need, "[t]he party requesting the grand jury information must show (1) the material 'is needed to avoid a possible injustice in another judicial proceeding,' (2) 'the need for disclosure is greater than the need for continued secrecy,' and (3) the 'request is structured to cover only material so needed.'" *Comm. on Judiciary*, 951 F.3d at 597-98 (quoting *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)). This standard is "a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others." *United States v. Sells Eng'g*, 463 U.S. 418, 445 (1983). The Supreme Court has stressed in particular that the standard is capacious enough to "accommodate[] any relevant considerations, peculiar to government movants, that weigh for or against disclosure in a given case," such as the relative risk that the disclosure sought by the government would lead to "further leakage or improper use." *Id.*; *see United States v. John Doe I*, 481 U.S. 102, 112 (1987).

**B. If It Reaches the Issue, the Court Should Authorize the Government to Disclose Grand Jury Materials to Deloitte Under Rule 6(e)(3)(E)(i)**

Under the framework set forth above, the Court should issue an order authorizing disclosure to Deloitte under Rule 6(e)(3)(E)(i). The requested order satisfies the Rule's textual requirements; the government has a particularized need to make the disclosures given the extraordinary discovery challenges posed by the Capitol Breach prosecution; and any conclusion by the Court that private contractors do not qualify as government personnel for purposes of Rule 6(e)(3)(A)(ii) would not preclude the Court from exercising its discretion to permit disclosure under the distinct font of authority in Rule 6(e)(3)(E)(i).

1. As an initial matter, the government's requested disclosure order meets the textual requirements of Rule 6(e)(3)(E)(i). The requested disclosure to Deloitte concerns "judicial proceeding[s]"—namely, criminal trials in cases where the grand jury has already returned indictments or may do so in the future. The contemplated use also qualifies as "preliminar[y] to" a judicial proceeding under applicable precedent. For example, the D.C. Circuit has held that disclosing a transcript to a witness summoned back to the grand jury for additional testimony "may be considered . . . preliminary to a *possible* criminal trial" for purposes of Rule 6(e)(3)(E)(i). *In re Grand Jury*, 490 F.3d at 986 (emphasis added); *see id.* (quoting with approval the conclusion in *United States v. Mayes*, 670 F.2d 126, 129 (9th Cir. 1982), "that grand jury proceedings are at least preliminary to a judicial proceeding"). The nexus between the disclosure and anticipated judicial proceedings is even tighter in this case. Criminal trials are more than merely "possible" where numerous indictments have been returned and members of the Court have begun setting trial dates. And the disclosure would be "preliminar[y] to" such trials where it will serve "to assist" the parties in their "preparation" and eventual "conduct of a judicial proceeding" by facilitating defense access to discovery materials and the government's compliance with its discovery obligations under the Constitution, and the Rules of Criminal Procedure. *See Baggot*, 463 U.S. at 480.

2. The government has also made the requisite showing of particularized need. *See Sells Eng'g*, 463 U.S. at 443; *In re Sealed Case*, 801 F.2d 1379, 1381 (D.C. Cir. 1986). First, the disclosure order is needed to avoid a possible injustice in the relevant judicial proceedings because the government requires Deloitte's assistance to engage in a complete and systematic review of all materials that are subject to the protections of Rule 6(e) (*e.g.*, grand jury transcripts and exhibits) or that may be subject to those protections (*e.g.*, pre-existing documents returned to

4

the grand jury in response to subpoenas duces tecum).  By reviewing these materials as a whole, the government can ensure defendants' complete, secure, and timely access to the materials to which they are entitled for trial preparations.  In particular, the government can ensure that materials that might have been obtained in the investigation of a particular defendant, but which ought to be provided to all defendants, are so provided.  For example, where a news media organization has provided a collection of photographs or footage of the riot in response to a subpoena in one particular case, the government intends to disclose such materials to all defendants.  Conversely, with materials housed in a single database, the government can more readily ensure that grand jury materials that should *not* be produced to all defendants are only produced to persons who are entitled to them.  And having the subpoena results in the same database with the rest of the discovery materials will ensure that they are included in any database searches utilized by attorneys to identify material subject to disclosure under the Jencks Act and *Brady*-and-*Giglio* principles.

By contrast, removing subpoenas from responses before transferring the materials to the vendor, or conducting a review in an effort to do so, would be extremely time-consuming and burdensome (if it is even possible), because the subpoenas are often intermingled in documentary responses that are electronically provided.[1]  As a result, having to segregate the substantial body of material that may trigger secrecy obligations under Rule 6(e) and provide case-specific

---

[1] Although the Supreme Court has cautioned against added expediency for the government's own investigations as the sole ground for breaching grand jury secrecy, *Sells Eng'g*, 463 U.S. at 431, that precedent does not preclude this Court from taking into account the efficiency and efficacy benefits of the requested disclosure order in considering particularized need.  *See John Doe I*, 481 U.S. at 116 (added "delay" and "expense" of other discovery mechanisms was a permissible consideration); *cf. In re Grand Jury Investigation*, 55 F.3d 350, 354 (8th Cir. 1995) (disclosure appropriate where it would not only save the state "time and money but also allow[] [for] more thorough discovery").

mechanisms for its disclosure to Deloitte threatens to slow the discovery process, delay contemplated trial proceedings, and undermine the considerable benefits of having a single, secure, searchable database for discovery materials.[2] And as explained in previous submissions, the government views the creation of such a database as a practical necessity to comply with its discovery obligations and protect defendants' right to a fair trial in an investigation that is of historic scope and significance but that also presents substantial discovery-related challenges. *See* Gov't Mot. at 4-6; Gov't Supplement at 3-5.

For similar reasons, the need for disclosure to Deloitte at this juncture is greater than the need for continued secrecy with respect to the relevant class of materials. *See Douglas Oil*, 441 U.S. at 222. Although the overall grand jury investigation remains ongoing, the requested disclosure is designed to facilitate prompt access to relevant grand jury materials by defendants under indictment, which many trial courts are authorizing when requested in these cases.[3] And the disclosure to Deloitte presents little additional risk of improper use or leakage because, as the government has explained, the company's personnel operate under strict confidentiality guidelines, they will further be admonished on the rules of grand jury secrecy, and they will act under the supervision of government attorneys. *See* Gov't Supplement at 4-5. As another court said about a similar private vendor, "[d]isclosure to [Litigation Technology Service Center],

---

[2] As the government has previously explained, the practical burdens would ostensibly be reduced if certain preexisting materials responsive to grand jury subpoenas are determined to fall outside the scope of Rule 6(e)'s secrecy strictures. *See* Gov't Mot. at 3 n.1. In that case, a substantial body of subpoena returns could be part of the Deloitte-managed database, leaving a smaller universe of grand-jury materials to be produced through other means.

[3] *See, e.g.*, *United States v. Jacob Chansley,* No. 21-cr-00003 (RCL), Document 37; *United States v. Thomas Caldwell, et al.,* No. 21-cr-00028 (APM), Document 124; *United States v. Christian Secor,* No. 21-cr-157 (TNM), Document 18; *United States v. Bruno Joseph Cua*, No. 21-cr-107 (RDM), Document 29; *United States v. Dominic Pezzola et al.,* No. 21-cr-52 (TJK), Document 42; *United States v. Edward Lang,* No. 21-cr-53 (CJN), Minute Order 6/15/2021.

which merely processes the documents and data and follows all government protocols for security, should not affect witnesses' willingness to come forward to testify, increase the risk of flight by grand jury targets, damage the reputations of those accused, or inject outside interference into the grand jury." *In re Disclosure of Matters Occurring Before a Grand Jury to the Litig. Tech. Serv. Ctr.*, No. MISC. 11-00163 JMS, 2011 WL 3837277, at *4 (D. Haw. Aug. 25, 2011); *see Douglas Oil*, 441 U.S. at 222 (listing those considerations).  The government submits that the same is true of the planned disclosures to Deloitte.

The third particularized-need consideration—whether the request is structured to cover only material needed to avoid the relevant injustice, *see Douglas Oil*, 441 U.S. at 222 —is also satisfied on the facts here.  To be sure, the requested order would authorize disclosure of all grand jury materials to Deloitte, rather than a specific set of the materials.  But the request cannot reasonably be "structured" any more narrowly, because the very point of the disclosure is to enable the government to engage in a systematic review of all discovery materials in a single, secure platform to ensure that materials that might have been obtained in the investigation of a particular defendant, but which ought to be provided to all defendants, are so provided.  The breadth of the planned disclosure, in short, is commensurate with the need justifying the request. *Cf. John Doe I*, 481 U.S. at 116 n.9 (rejecting concerns that "the lack of particularity" in a government request weighed against as disclosure order under the prior version of Rule 6(e)(3)(E)(i)).

3.  This Court may exercise its discretion to authorize disclosure under Rule 6(e)(3)(E)(i) regardless of whether it agrees with the government's primary submission that disclosure to Deloitte is permissible under the government-personnel exception in Rule 6(e)(3)(A)(ii).  No binding precedent forecloses that result.  To the contrary, "the better reasoned authority holds

that disclosure *can* be made to private parties, pursuant to court order, under Rule [6(e)(3)(E)(i)]." *Grand Jury Law & Practice* § 5:9 n.10 (emphasis added); *see, e.g.*, *Mayes*, 670 F.2d at 129 & n.2 (rejecting challenge to Rule 6(e)(3)(E)(i) order authorizing disclosure to medical expert who would review investigative materials before testifying in the grand jury). And courts have exercised—or considered exercising—their authority under Rule 6(e)(3)(E)(i) even after determining that private parties did not qualify as government personnel.

For example, a district court in California held that two "private consultants" fell outside the government-personnel exception in Rule 6(e)(3)(A)(ii), but also declined to disturb its earlier order under Rule 6(e)(3)(E)(i) authorizing disclosure to one of the two consultants. *United States v. Pacific Gas and Electric Co.*, No. 14-cr-175, 2016 WL 3255069, at *3 & n.4 (N.D. Cal. 2016). In addition, although rejecting the government's particularized-need argument on the record before it, another district court did not question its power to authorize disclosure to private consultants under Rule 6(e)(3)(E)(i) even after it had determined that the consultants did not qualify as "government personnel" under Rule 6(e)(3)(A)(ii). *See In re Grand Jury Matter*, 607 F. Supp. 2d 273, 276-77 (D. Mass. 2009).

Some out-of-circuit decisions have taken a different view. In *United States v. Tager*, 638 F.2d 167 (1980), a divided panel of the Tenth Circuit reversed a district court's decision to authorize disclosure to an investigator employed by the Insurance Crime Prevention Institute who was assisting the government at the grand-jury stage. The panel majority drew support from "the structure of Rule 6(e)," reasoning that the Rule addressed "[t]he need for assistance in federal investigations" not through the judicial-proceeding exception but in Rule 6(e)(3)(A)(ii)'s government-personnel provision, which the majority understood to have deliberately excluded "private persons like" the insurance investigator in that case. *Id.* at 170. District courts in

8

Indiana and West Virginia have also denied government motions to disclose materials to private auditors based on similar reasoning. See *In re November 1992 Special Grand Jury for Northern District of Indiana*, 836 F. Supp. 615, 617-18 (N.D. Ind. 1993) (holding that the judicial-proceeding exception "cannot be used to judicially expand the limitations on who may assist prosecutors in their investigations as particularly set out in [Rule 6(e)(3)(A)(ii)]"); *In re Disclosure of Grand Jury Material*, 645 F. Supp. 76, 79 (N.D. W.V. 1986) (similar).

The government submits that these decisions—none of which binds this Court—are unsound. The better view is instead reflected in Judge Seymour's dissent in *Tager*. That dissent explained that the relevant structural principle from Rule 6(e) can "just as easily be viewed as disclosures that do not require court approval versus disclosures that do," and that "[p]ermitting disclosures to government personnel without court approval, as Congress did in subsection (A), does not of itself imply a prohibition in subsection [(E)] against court-approved disclosure to nongovernment personnel." *Tager*, 638 F.2d at 172 (Seymour, J., dissenting).[4]

The Supreme Court's decisions since *Tager* bear out the dissent's reasoning. Indeed, the Court has twice stressed the fundamental distinction in Rule 6(e) between the categories of disclosures that government attorneys may make without court approval and those that require such approval. In *Sells Eng'g*, the Court rejected a reading of Rule 6(e)(3)(A)(i) that—while

---

[4] *Tager* is of questionable precedential value for another reason. As commentators have noted (*Grand Jury Law & Practice* § 5:9 n.10), its practical impact has been substantially limited by a more recent Tenth Circuit decision holding that an expert under contract with the government *did* qualify as "government personnel" under what is now Rule 6(e)(3)(A)(ii). *See United States v. Anderson*, 778 F.2d 602, 604 (10th Cir. 1985). Moreover, both *Tager* and the above-cited district court decisions are distinguishable on their facts. Each case involved disclosure to a private party to assist a grand jury with an ongoing investigation, apparently at the pre-indictment phase. Here, by contrast, the government seeks authorization to disclose materials to an independent contractor that is assisting with discovery matters that typically take place post-indictment and are in service of the anticipated criminal trials stemming from the indictments.

9

textually "plausible," 463 U.S. at 435—would have allowed government attorneys to use grand jury materials in civil cases without court approval. The Court instead determined that "[t]he policies" underlying Rule 6(e), along with its drafting history, "require that any disclosure to attorneys other than prosecutors be judicially supervised rather than automatic." *Id.* Four years later, the Court relied on the same distinction in approving a district court's disclosure order under what is now Rule 6(e)(3)(E)(i). *See John Doe I*, 481 U.S. at 114-15. The Court recognized the concern expressed in *Sells Eng'g* about the potential for grand jury abuse if government attorneys were able, without court approval, to share grand jury materials freely with colleagues pursuing civil matters. But the Court found that "concern . . . far less worrisome when the attorneys seeking disclosure must go before a court and demonstrate a particularized need prior to any disclosure, and when, as part of that inquiry, the district court may properly consider whether the circumstances disclose any evidence of grand jury abuse." *Id.*

The reasoning in these decisions confirms that no structural principle in Rule 6(e) precludes this Court from authorizing disclosure to Deloitte—"subject to any other conditions that it directs," Fed. R. Crim. P. 6(e)(3)(E)(i)—if it separately determines that Deloitte does not qualify as "government personnel" under Rule 6(e)(3)(A)(ii). Those two provisions instead reflect the central distinction in the Rule between disclosures requiring court approval and those that do not. And because the government has satisfied all of the criteria in Rule 6(e)(3)(E)(i), the Court should authorize the requested disclosure under that provision if it reaches the issue.[5]

---

[5] The government has presented its request for disclosure authorization under Rule 6(e)(3)(E)(i) to this Court because it was already considering a disclosure question under Rule 6(e)(3)(A)(ii). If the Court believes that the alternative request under Rule 6(e)(3)(E)(i) is more properly directed to the judges presiding over individual criminal cases, the government welcomes guidance from the Court on that question. *Cf.* Fed. R. Crim. P. 6(e)(3)(F) (requiring only that a petition under Rule 6(e)(3)(E)(i) "be filed in the *district* where the grand jury convened") (emphasis added).

Submitted this 13th day of July 2021.

                                    CHANNING PHILLIPS
                                    Acting United States Attorney

By:    /s/
       Emily A. Miller
       Capitol Breach Discovery Coordinator
       D.C. Bar No. 462077
       555 4th Street, N.W., Room 5826
       Washington, D.C. 20530
       202-252-6988
       Emily.Miller2@usdoj.gov